COMMONWEALTH of Pennsylvania, Appellant,

v.

James Alvin SHEARER, Sr., Appellee.

Superior Court of Pennsylvania.

Argued Nov. 7, 2002.

Filed June 20, 2003.

Hugh J. Burns, Asst. Dist. Atty., Philadelphia, for Com., appellant.

Armand R. Cingolani, Butler, for appellee.

BEFORE: DEL SOLE, P.J., McEWEN, P.J.E., and HUDOCK, JOYCE, STEVENS, TODD, KLEIN, BENDER and GRACI, JJ.

OPINION BY HUDOCK, J.:

¶ 1 This is a certified interlocutory appeal taken by the Commonwealth from a pre-trial order compelling a child witness to submit to psychological testing prior to the trial court's determination of whether the child is competent to testify in court.[1] We quash.

¶ 2 In November of 1999, James Alvin Shearer, Sr. (Appellee) was charged with sexually assaulting a four year old boy. On August 11, 2000, the Commonwealth filed a notice as required by the Tender Years Hearsay Act[2] that the prosecutor intends to offer into evidence a taped interview with the child that was conducted by Butler County Children and Youth Services. Appellee moved to have the child examined by a psychologist alleging that the little boy's competency to testify is an issue in the case. The trial court conducted several hearings on the matter at which the Commonwealth unsuccessfully opposed the defense motion.

¶ 3 On April 5, 2001, the trial court entered an order directing the child to submit to an examination by Appellee's proposed expert. A second order, entered on April 26, 2001, states that the psychologist must confine the examination to ascertaining the boy's ability to give a correct account of events he has seen or heard regarding the acts charged against Appellee. The trial court clearly indicated the purpose of the psychological examination is to assist in the court's determination of whether the child is competent to testify against Appellee. Trial Court Opinion, 4/26/01, at 3.

¶ 4 On May 2, 2001, the Commonwealth filed a notice of appeal accompanied by a certification pursuant to Rule of Appellate Procedure 311(d) that the pre-trial order will terminate or substantially handicap the prosecution of the charges against Appellee. The trial court directed the Commonwealth to file a concise statement of issues raised on appeal and the Commonwealth complied. Initially, a three judge panel of this Court quashed the Commonwealth's appeal as interlocutory and unappealable at this stage of the proceedings. The Commonwealth sought *en banc* review and we granted its request. This appeal

---

1. The Commonwealth has certified that the order in question substantially handicaps the prosecution pursuant to Rule of Appellate Procedure 311(d).

2. 42 Pa.C.S.A. § 5985.1.

presents two arguments for our consideration: (1) whether the Superior Court has jurisdiction to hear the Commonwealth's appeal from the trial court's pre-trial order compelling the child witness to undergo a compulsory psychological examination; and (2) whether the trial court erred in ordering a compulsory mental examination of the child by Appellee's proposed expert.

■ ¶ 5 The Commonwealth first argues that Rule of Appellate Procedure 311(d) authorizes an appeal from any pre-trial order whenever the prosecutor files a certification that the order effectively terminates a case or imposes a substantial handicap to the prosecution. According to the Commonwealth, a Rule 311(d) certification automatically creates jurisdiction for an appellate court to address any and all substantive questions certified by a prosecutor. We cannot agree with this position.

¶ 6 Rule of Appellate Procedure 311 states in pertinent part:

In a criminal case, under circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.

Pa.R.A.P. 311(d). The Rule does not explicitly limit the Commonwealth's right of interlocutory appeal to any particular class of pre-trial orders. Rather, it indicates that the Commonwealth may proceed with an interlocutory appeal "under circumstances provided by law." *Id.*

¶ 7 Our Supreme Court has explained that the entire purpose of amending Rule 311 to add subsection (d) was to "permit an interlocutory appeal as a matter of right to the Commonwealth in instances where the Commonwealth asserts that the order will terminate or substantially handicap the prosecution." *Commonwealth v.*

*Rosario,* 538 Pa. 400, 404, n. 3, 648 A.2d 1172, 1174 n. 3 (1994). It is clear from the context in which the above statement was made that the Supreme Court's attention was focused on the effect of a pre-trial order granting suppression. However, our Supreme Court subsequently extended this reasoning and permitted the Commonwealth to appeal a pre-trial order granting a motion *in limine* excluding evidence. *Commonwealth v. Matis,* 551 Pa. 220, 231, 710 A.2d 12, 17 (1998). *Matis* relies on an earlier Supreme Court determination that no fundamental distinction can be made between a motion to suppress evidence and a motion *in limine* concerning the admissibility of evidence:

There is no essential difference between suppression rulings and rulings on motions *in limine* to admit or exclude evidence. In both cases, a pretrial ruling is handed down which admits or excludes evidence at trial, and in both cases, once a jury is sworn, the Commonwealth may not appeal from an adverse ruling. That suppression motions are always of constitutional dimension and motions *in limine* are only sometimes of constitutional dimension is of no import, for in both cases, without an immediate right of review, the Commonwealth's case may be so hampered that the Commonwealth may be unable to proceed.

*Commonwealth v. Gordon,* 543 Pa. 513, 517, 673 A.2d 866, 868 (1996). This ruling turns on the inescapable reality that, once a jury is sworn, the Commonwealth may not appeal an adverse ruling, whatever form that ruling takes. *Id.,* 543 Pa. at 517, 673 A.2d at 868.

■ ¶ 8 The Double Jeopardy Clause of the United States Constitution bars a second prosecution for the same offense after either an acquittal or a conviction. *Commonwealth v. McGee,* 560 Pa. 324,

327, 744 A.2d 754, 756 (2000). "Double jeopardy protections afforded by the United States and Pennsylvania constitutions are coextensive and prohibit repeated prosecutions for the same offense." *Commonwealth v. Lively*, 530 Pa. 464, 467, 610 A.2d 7, 8 (1992). Our statutory law explicitly precludes the Commonwealth from trying a defendant a second time if a former prosecution resulted in either acquittal or conviction. *Commonwealth v. Bracalielly*, 540 Pa. 460, 470, 658 A.2d 755, 760 (1995) (citing 18 Pa.C.S.A. § 110). Thus, double jeopardy considerations preclude appeal if the Commonwealth loses. If it wins, it still may not appeal because it is not an aggrieved party. In contrast, a defendant convicted under an erroneous pre-trial ruling retains the opportunity to cure the defect on appeal.

¶ 9 Our Supreme Court originally authorized the Commonwealth to take interlocutory appeals from pre-trial suppression orders because of the effective finality of such rulings:

From the point of view of the Commonwealth, two possible situations may arise: (a) the order of suppression will result in a termination and conclusion of the prosecution or (b) while the order of suppression will not result in a termination or conclusion of the prosecution, it will result in a prosecution wherein the Commonwealth is handicapped because it cannot present *all* its available evidence.

*Commonwealth v. Bosurgi*, 411 Pa. 56, 63, 190 A.2d 304, 308 (1963). The Court further explained that unless the prosecution is afforded the right of appeal after entry of an adverse suppression order, the Commonwealth will be completely deprived of any opportunity ever to secure an appellate court evaluation of the validity of that pre-trial order.

¶ 10 *Bosurgi* and its progeny address the Commonwealth's need to proceed to trial with the proper quantum of admissible evidence. If the Commonwealth has no opportunity to obtain appellate review of an adverse pre-trial interlocutory order implicating double jeopardy concerns, such review will never occur because the Commonwealth cannot try a defendant for a second time if the first prosecution results in an acquittal. Thus, some pre-trial evidentiary rulings are in essence "final" in the sense that if the defendant is acquitted, appellate review of the trial court's order can never be attained. This premise is so basic that our Supreme Court has not limited the principle originally articulated in *Bosurgi* only to pre-trial evidentiary rulings. *See, e.g., Matis, supra* (permitting the Commonwealth to appeal, on double jeopardy grounds, from an order denying a continuance to secure a necessary witness); *Commonwealth v. Johnson*, 542 Pa. 568, 669 A.2d 315 (1995) (authorizing the Commonwealth to appeal from an order transferring a case from the criminal division to the juvenile division because double jeopardy attaches at the initiation of a juvenile adjudicatory hearing).

¶ 11 In the present case, a pre-trial competency ruling is required of the trial court with regard to the child witness. As a general matter, a witness's competency to testify is presumed and the burden falls on the objecting party to demonstrate the witness's incompetence. *Commonwealth v. Harvey*, 571 Pa. 533, 548, 812 A.2d 1190, 1199 (2002). However, when a child under the age of fourteen is called to testify, the child's competency must be independently established. *Id.* A child's competency to testify is a threshold legal issue that the trial court must decide. *Commonwealth v. Washington*, 554 Pa. 559, 563, 722 A.2d 643, 646 (1998). In order to be found competent, a child under

fourteen must possess: (1) the capacity to communicate, including both the ability to understand questions and to frame and express intelligent answers, (2) the mental capacity to observe the occurrence itself and to remember the matter about which the child has been called to testify, and (3) a consciousness of the duty to speak the truth. *Harvey,* 571 Pa. at 548–49, 812 A.2d at 1199. The competency inquiry must take place outside the presence of the jury. *Washington,* 554 Pa. at 566, 722 A.2d at 647.

■ ¶ 12 Instantly, the trial has not commenced, no jury has been impaneled, and no competency hearing has been conducted by the trial court. In recognition of its obligations, the trial court has ordered the child witness to submit to a psychological examination prior to the competency hearing. However, no order has as yet been entered which either declares the child to be incompetent or suppresses any portion of the child's proposed testimony. Furthermore, the trial court has entered no order indicating that Appellee will be permitted to call the examining psychologist as a witness. In other words, no order has been entered delineating the quantum of evidence that the Commonwealth or Appellee will be permitted to adduce at trial.

¶ 13 If the trial court declares the child to be incompetent, thereby excluding evidence, *Bosurgi* and its progeny authorize the Commonwealth to pursue an interlocutory appeal as of right pursuant to Rule 311(d). *See also Commonwealth v. D.J.A.,* 800 A.2d 965 (Pa.Super.2002) (*en banc*) (explicating relevant considerations in a Commonwealth appeal from an order declaring a child witness incompetent to testify concerning sexual abuse allegations). If the trial court denies a motion *in limine* and permits Appellee to adduce psychological evidence to which the Commonwealth

objects, the prosecutor may certify an interlocutory appeal consistent with our decision in *Commonwealth v. Jones,* 826 A.2d 900 (Pa.Super.2003)(*en banc*). The Commonwealth clearly has a right to challenge a pretrial ruling that circumscribes the quantum of evidence it may adduce at trial. But no such ruling has been made yet. The pre-trial order entered in this case is in no sense "final" and it does not implicate double jeopardy concerns. Therefore, despite the Commonwealth certification pursuant to Rule 311(d), we cannot justify asserting jurisdiction over this appeal.

¶ 14 Because of our ruling on the jurisdictional issue, we do not reach the merits of the Commonwealth's challenge to the trial court's order. The questions of whether the child witness will be declared competent to testify and, if so, whether counsel for appellee will be permitted to subject the boy to harsh cross-examination, must be left for the trial court to resolve at the appropriate time. *See* Appellee's Brief at 14 (indicating the intention of Appellee's counsel to conduct a brutal cross-examination thereby inflicting emotional trauma with "lasting effects"). As matters now stand, the trial court's order has neither terminated nor substantially handicapped the Commonwealth's case. Thus, there is no jurisdictional basis for this appeal and we must quash it.

¶ 15 Appeal quashed. Superior Court jurisdiction relinquished. The case is remanded to the trial court for further proceedings.

¶ 16 DEL SOLE, P.J. files a Concurring Opinion, joined by McEWEN, P.J.E., TODD, J., and BENDER, J.

¶ 17 TODD, J. concurs in the result of this Opinion by HUDOCK, J.

¶ 18 GRACI, J. files a Dissenting Opinion, joined by STEVENS, J.

## CONCURRING OPINION BY DEL SOLE, P.J.:

¶ 1 I agree with the Majority's decision to quash the appeal in this case. As the Majority recognizes, the trial court's order in this matter has not terminated or substantially handicapped the Commonwealth's case.

¶ 2 However, I cannot accept the Majority's statement that if the trial court ultimately denies a motion *in limine* and permits the defense to adduce psychological evidence to which the Commonwealth objects, the prosecutor may certify an interlocutory appeal under Rule 311(d). For the reasons expressed in my Dissenting Opinion in *Commonwealth v. Jones,* 826 A.2d 900 (Pa.Super.2003), I believe such an appeal is not authorized by the Rule. The Commonwealth possesses the right of appellate review of the validity of a pretrial order which excludes Commonwealth evidence and thereby substantially handicaps its prosecution. An order permitting a defendant to introduce certain evidence should not be subject to a right to appeal under Rule 311(d).

¶ 3 McEWEN, P.J.E., TODD, J., and BENDER, J. joined in this Concurring Opinion by DEL SOLE, P.J.E.

## DISSENTING OPINION BY GRACI, J.:

¶ 1 While I am always reluctant to disagree with my learned colleagues in the majority, under the circumstances here presented, I am constrained to dissent.

¶ 2 The majority accurately portrays the procedural posture of this case so I will not repeat it here. Suffice it to say that this appeal from a pre-trial order is before us because the Commonwealth, in conformity with Rule 311(d) of the Pennsylvania rules of Appellate Procedure, certified in its notice of appeal that the order that the child victim in this case undergo an involuntary psychological examination to determine the victim's competency to testify against Appellee "will terminate or substantially handicap the prosecution" of the case. We have previously been clear in stating: " 'The Commonwealth's good faith certification, alone, provides an absolute right of appeal; it is not required to demonstrate the need for the evidence.' " *Commonwealth v. Allburn,* 721 A.2d 363, 365 (Pa.Super.1998) (quoting *Commonwealth v. King,* 456 Pa.Super. 72, 689 A.2d 918, 921 (1997)) (citing *Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382, 386 (1985)). In *Allburn,* we recognized that *King* involved an order granting a defense motion *in limine* excluding certain evidence and that *Allburn* itself involved an order allowing certain defense evidence. *Id.* In reaching the same conclusion that a pretrial appeal on the Commonwealth's certification was proper we said "the same logic applies." *Id.* We stated in unequivocal terms: "The Commonwealth does not have to prove it will be 'substantially handicapped'; the good faith certification suffices." *Id.*

¶ 3 In reaching the conclusion that the Commonwealth's appeal in *Allburn* was properly before us under Rule 311(d) we noted:

While the specific handicap is not articulated, and need not be, we can easily envision the effect this ruling [allowing introduction of rape victim's prior sexual conduct as an exception to the Rape Shield Law, 18 Pa.C.S.A. § 3104(b) ] may have on the victim. The Rape Shield law was meant to protect a victim from being placed on trial, victimized a second time by the justice system. An order removing that minimal protection may cause a victim to refuse to testify at all, an understandable if regrettable result. As such orders may affect the

availability of evidence, they should be subject to pretrial review.

*Allburn,* 721 A.2d at 365 n. 2.

¶ 4 In my view, the "same logic applies" here. The alleged victim in this case may not wish to undergo such an examination. Such a requirement may cause the victim, like the rape victim in *Allburn,* to refuse to testify at all. Accordingly, like the order in *Allburn,* as the order in this case "may affect the availability of evidence," it is subject to pretrial review on the Commonwealth's good faith certification.

¶ 5 The majority does not address *Allburn.* While its facts (and those of *King* ) may be distinguishable, its logic is not. The effect of the majority's ruling, however, will, in my view, lead to arguments as to the contestability of certifications by the Commonwealth, a possibility we have previously eschewed. *King,* 689 A.2d at 921 ("The Commonwealth's good faith certification, *alone,* provides an absolute right to appeal....") (emphasis added); *Allburn,* 721 A.2d at 365 (same, quoting *King* ). That will result from the majority's statement that it cannot agree with the Commonwealth's position that "a Rule 311(d) certification automatically creates jurisdiction for an appellate court to address any and all substantive questions certified by a prosecutor." Opinion, at 385.[3]

¶ 6 Having concluded that the order here under review is appealable by the Commonwealth, I am obliged to address the merits of the appeal. Before doing so, however, I note that the Commonwealth offered alternative theories as to the appealability of the order for a psychological examination of its child victim. The Commonwealth argued that the order was appealable as a collateral order under Pa. R.A.P. 313. Substituted Brief for Appellant on *En Banc* Reargument, at 17–18. The Commonwealth also argued that we could consider its notice of appeal as a petition for review under Pa.R.A.P. 1503. *Id.,* at 18–19. The majority does not address these alternatives. Though I find that this appeal is properly before us Rule 311(d), I feel compelled to address the alternatives since the majority, by its silence, necessarily determines that none of them form the basis for a proper appeal.

¶ 7 As to this child victim, this order is a collateral order and is subject to the immediate appeal by the child. *Commonwealth v. Miller,* 406 Pa.Super. 206, 593 A.2d 1308 (1991) (Women's Resource Center could appeal order directing it to provide records pertaining to alleged sexual assault victim); *Commonwealth v. Simmons,* 719 A.2d 336 (Pa.Super.1998) (mental health provider could appeal order directing it to turn over records relating to alleged sexual abuse victim). The order here meets the definition of collateral order just as in *Miller* and *Simmons.*[4] In those cases, the

---

3. I do not mean to suggest that the Commonwealth's certification under Rule 311(d) is never contestable. The certification must be made in good faith. Evidence to the contrary could result in the quashing of an appeal brought by way of Rule 311(d). I recognize that some might say that this is little protection because there would rarely be evidence of lack of good faith or bad faith by the certifying prosecutor. This may be so, but it is because the Commonwealth's prosecutors, with rare exception, take their responsibilities to the courts and to the public seriously and in conformity with the rules of professional conduct.

4. This order is clearly separable from the main cause of action. The issue raised by this order, *i.e.,* the propriety of the involuntary psychological examination of the child victim, may be addressed without analysis of the alleged underlying cause of action. *Barley v. Consolidated Rail Corp.,* 820 A.2d 740, 744 (Pa.Super.2003). As the Commonwealth explains: "[t]he question of whether the victim must submit to an involuntary mental examination is separate from the issues of his

appeals were brought by the entities which were the subjects of the disputed orders.[5]

¶ 8 I am not aware of any indication on this record as to when the child victim or anyone on the child's behalf was advised of the entry of the order for a psychological exam. The child may still be able to appeal the order.[6] This would be the child's appeal; not the Commonwealth's. Who would act to protect the child's rights in that appeal is beyond the scope of this opinion. I observe, however, that "[t]he victim in a criminal case is only a witness; he is not the 'client' of the district attorney." *Commonwealth v. Price*, 454 Pa.Super. 88, 684 A.2d 640, 642 (1996). Perhaps under circumstances such as those presented here, the court should appoint a guardian *ad litem* for the child witness.[7] The child (or, more likely, the child's advocate) could argue the child's rights and the impact of an order for an involuntary psychological examination on those rights.[8]

¶ 9 As to the Commonwealth's second alternative, I find it unavailing. *Commonwealth v. Tilley*, 566 Pa. 312, 780 A.2d 649

(2001), relied on by the Commonwealth, involved a situation where the trial court refused to amend its interlocutory order and certify it for immediate appeal under section 702 of the Judicial Code, 42 Pa. C.S.A. § 702(b). *See also*, Pa.R.A.P. 1311. The *Tilley* Court said a petition for review could be filed seeking to rectify that omission and that an appellate court could review the matter if it determined that the trial court abused its discretion in refusing to certify the order. *See* Pa.R.A.P. 1311 **Note**. Here, the Commonwealth never sought a section 702 certification from the trial court. Accordingly, its reliance on *Tilley* is misplaced.

¶ 10 Returning to the merits, the question of a person's competency to be a witness is vested with in the sound discretion of the trial court. *Commonwealth v. D.J.A.*, 800 A.2d 965, 969 (Pa.Super.2002) (*en banc*). We review such a determination for "flagrant" or "clear abuse of discretion." *Id.*, at 969–970. On this record, I would find such an abuse.

---

credibility or his competence to testify." Substituted Brief for Appellant on *En Banc* Reargument, at 17. Important rights of the child, including the fundamental right to be free from unwarranted governmental intrusion, are involved. Such rights are deeply rooted in public policy and go beyond this litigation. *Ben v. Schwartz*, 556 Pa. 475, 729 A.2d 547, 552 (1999). They are too important to be denied review. Lastly, if the court's order cannot be reviewed before the examination is conducted, the claim will be lost forever. Nothing could be done by any court at any time thereafter that could restore the child victim's right not to undergo an involuntary psychological examination if the order for same was erroneously entered.

5. I do not think this court's *dicta* in *Commonwealth v. Montgomery*, 799 A.2d 149, 154 n. 6 (Pa.Super.2002), establishes that the Commonwealth may appeal all collateral orders in criminal cases as a matter of right. As we said in *Montgomery*, "[t]he collateral order

inquiry is necessarily dependant upon the party raising its application, as the questions asked related directly to the party seeking an appeal." *Id.* (citation omitted) As noted above, when asked in relation to the child victim in this case, it is clear that the order is a collateral order under Rule 313.

6. Clearly, the child could do so by refusing to undergo the examination and being held in contempt. *Commonwealth v. Williams*, 729 A.2d 603, 607 n. 1 (Pa.Super.1999).

7. That is not to say that the district attorney or one of his or her assistants could not represent a child witness on appeal if requested to do so. That is a matter of policy for the district attorney, not the courts.

8. The Commonwealth's brief identifies many of the child's rights implicated by the order here at issue. Substituted Brief for Appellant on *En Banc* Reargument, at 24–25.

¶ 11 As we are dealing here with the competency of a young child, the trial court must determine if the witness has

> (1) such capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering what it is that she is called to testify about and (3) a consciousness of the duty to speak the truth.

*D.J.A.*, 800 A.2d at 969 (citations and quotations omitted). In determining competency, a court may rely on expert testimony. *Id.*, at 973. We have previously said, however, that "[a] 'trial court need not order an investigation of a witness's competency, unless he or she has some doubt of such after observing the witness.' " *Commonwealth v. Smith*, 414 Pa.Super. 208, 606 A.2d 939, 943 (1992).

¶ 12 Here, however, the trial court ordered a psychological examination of the child without ever interviewing the child. In a different context, members of our Supreme Court have referred to psychological exams ordered by the State as "Orwellian." *In re T.R.*, 557 Pa. 99, 731 A.2d 1276, 1281 (1999) (plurality). Certainly, trial courts regularly make these determinations in a variety of proceedings. A court ordered psychological examination should never be the starting point for a competency determination for a child. Here, the trial court never observed the witness. At this point, therefore, the order directing the involuntary psychological examination of the child witness on the sole issue of competency was an abuse of discretion. Accordingly, I would vacate the order and remand for further proceedings.

¶ 13 STEVENS, J. joined in this Dissenting Opinion by GRACI, J.