J-S01011-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| PATRICK LEROY RUGG, | : | |
| | : | |
| Appellant | : | No. 458 WDA 2014 |

Appeal from the Judgment of Sentence entered on July 30, 2013
in the Court of Common Pleas of Cambria County,
Criminal Division, No. CP-11-CR-0001342-2010

BEFORE:  GANTMAN, P.J., JENKINS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:　　　　　　**FILED FEBRUARY 19, 2015**

Patrick Leroy Rugg ("Rugg") appeals from the judgment of sentence imposed after a jury convicted him of four counts of involuntary deviate sexual intercourse with a child ("IDSI"), and one count each of trafficking of persons, indecent assault, endangering the welfare of a child, and corruption of minors.[1]  We affirm the convictions, vacate the judgment of sentence, and remand for resentencing.

---

[1] **See** 18 Pa.C.S.A. §§ 3123(b), 3002(a), 3126(a)(7), 4304(a)(1), 6301(a)(1).  Regarding Rugg's conviction of trafficking of persons in June 2012, effective on September 2, 2014, the former Chapter of the Crimes Code concerning this offense was repealed and replaced with a new Chapter. **See id.** § 3001 et seq.; **see also id.** § 3011(b) (codifying the new offense of trafficking in minors).

The trial court has set forth the relevant history underlying this appeal in its Pa.R.A.P. 1925(a) Opinion, which we incorporate herein by reference. *See* Trial Court Opinion, 5/20/14, at 1-2.[2]

On appeal, Rugg presents the following issues for our review:

1. Whether the trial court abused its discretion by conducting the competency hearing of the child victim-witness in the presence of the jury[,] and by summarily precluding the production of evidence to expand such competency hearing to investigate taint?

2. Whether the trial court abused its discretion in denying [Rugg's] Motion for a new trial based on the weight of the evidence inasmuch as the trial court deprived [Rugg] of full and effective cross-examination of the victim[,] whose evidence had been shaped?

3. Whether the trial court erred by denying [Rugg's Motion for] judgment of acquittal on the count … of trafficking of persons inasmuch as the evidence did not suffice to prove all of the elements of the offense?

4. Whether the trial court erred by the "sexually violent predator" [hereinafter "SVP"] determination inasmuch as the evidence presented by the Commonwealth did not suffice to prove all of the elements of [SVP] status by clear and convincing evidence?

5. Whether the sentencing court erred by imposing 10-year mandatory minimum terms[,] pursuant to 42 Pa.C.S. § 9718(a)(1)[,] for every conviction of [IDSI,] in contravention of the constitutionally-protected right to a jury trial and due process, resulting in an illegal sentence?

---

[2] Following the trial court's reinstatement of Rugg's appeal rights, *nunc pro tunc*, on March 11, 2014, Rugg timely filed his Notice of Appeal.

6. Whether the sentencing court abused its discretion in imposing sentence by running all of the terms for [IDSI] consecutively, resulting in a non-individualized, *de facto* life sentence[,] contrary to the Sentencing Code?

Brief for Appellant at 10-11 (emphasis and capitalization omitted, issues re-numbered for ease of disposition).

Rugg first argues that the trial court erred and deprived him of a fair trial by conducting the competency hearing of "the thirteen-year-old victim … in the jury's presence[,[3]] and [by] preclud[ing] [] Rugg from meeting the threshold to expand the competency hearing to investigate taint[,]" *i.e.*, whether the victim's testimony was unduly influenced by third parties who interviewed the victim during the investigation. *Id.* at 22 (footnote added). Rugg points out that the trial court concedes in its Pa.R.A.P. 1925(a) Opinion that it should have conducted the competency hearing of the minor victim outside of the presence of the jury. Brief for Appellant at 23; *see also* Trial Court Opinion, 5/20/14, at 9; *Commonwealth v. Moore*, 980 A.2d 647, 653 (Pa. Super. 2009) (holding that because the victim "was only thirteen years old when she testified at trial[,]" "the trial court should have held a competency hearing outside of the presence of the jury."). Rugg further argues that the trial court erred, and violated the dictates of the Pennsylvania Supreme Court in *Commonwealth v. Delbridge*, 855 A.2d 27 (Pa. 2003), "by [] ruling[,] prior to the competency hearing[,] that [] Rugg

---

[3] Prior to the victim's testimony at trial, the trial court asked him questions pertaining to whether he understood the difference between a truth and a lie, and his obligation to tell the truth. *See* N.T., 6/25/12, at 82-83.

had not presented some evidence of taint to allow an expanded inquiry into taint …." Brief for Appellant at 24 (citing **Delbridge**, 855 A.2d at 40 (stating that "**[d]uring the hearing**[,] the party alleging taint bears the burden of production of evidence of taint and the burden of persuasion to show taint by clear and convincing evidence.") (emphasis supplied by Rugg)).

> The determination of a witness's competency rests within the sound discretion of the trial court. The decision of the trial court will not be disturbed absent a clear abuse of that discretion; consequently[,] our standard of review of rulings on the competency of witnesses is very limited indeed.
>
> In Pennsylvania, the general rule is that every witness is presumed to be competent to be a witness. However, young children must be examined for competency pursuant to the following test: (1) The witness must be capable of expressing intelligent answers to questions; (2) The witness must have been capable of observing the event to be testified about and have the ability to remember it; and, (3) An awareness of the duty to tell the truth. An allegation of taint centers on the second element of the above test. Where an allegation of taint is made before trial[,] the appropriate venue for investigation into such a claim is a competency hearing. A competency hearing is centered on the inquiry into the minimal capacity of the witness to communicate, to observe an event and accurately recall that observation, and to understand the necessity to speak the truth.

**Commonwealth v. Davis**, 939 A.2d 905, 906-07 (Pa. Super. 2007) (citations, quotation marks and ellipses omitted); **see also Delbridge**, 855 A.2d at 39-40.

"In order to trigger an investigation of competency on the issue of taint, the moving party must show some evidence of taint. Once some evidence of taint is presented, the competency hearing must be expanded to

explore this specific question." **Delbridge**, 855 A.2d at 40. This Court has explained that

> [w]hen determining whether a defendant has presented "some evidence" of taint, the court must consider the totality of the circumstances surrounding the child's allegations. Some of the factors that courts have deemed relevant in this analysis include the age of the child, whether the child has been subject to repeated interviews by adults in positions of authority, and the existence of independent evidence regarding the interview techniques utilized.

**Moore**, 980 A.2d at 652 (citations and some quotation marks omitted).

In its Pa.R.A.P. 1925(a) Opinion, the trial court thoroughly addressed Rugg's claim and explained its reasons for determining that it does not entitle him to relief. **See** Trial Court Opinion, 5/20/14, at 8-11. The trial court's analysis is supported by the law and the record; therefore, we affirm on this basis with regard to Rugg's first issue. **See id.**[4]

Next, Rugg contends that the trial court abused its discretion by denying his Motion for a new trial based on the weight of the evidence. **See**

---

[4] As an addendum, we observe that there is no merit to Rugg's claim that the trial court "precluded [him] from meeting the threshold to expand the competency hearing to investigate taint[.]" Brief for Appellant at 22. Rather, the trial court found, and the record supports that Rugg had failed to meet his burden of production under **Delbridge** to overcome the presumption of the victim's competency, so as to trigger an expanded competency hearing on the issue of taint. **See** Trial Court Opinion, 5/20/14, at 10-11; **see also Commonwealth v. Cesar**, 911 A.2d 978, 985-86 (Pa. Super. 2006) (holding that the appellant did not present evidence of taint, as the minor witness continually stated that she remembered the critical events independently). Additionally, we determine that the trial court's minor procedural error in conducting the competency hearing in the presence of the jury does not constitute reversible error, as there is no indication that same prejudiced Rugg or deprived him of a fair trial. **See Moore**, 980 A.2d at 658.

Brief for Appellant at 19-22. Specifically, Rugg asserts, he "was deprived of full and effective cross-examination of the child-victim, [] whose testimony had been shaped by the police, social workers and other professionals who interviewed him after [] Rugg's arrest" (hereinafter collectively referred to as "the interviewing professionals"). *Id.* at 19; *see also id.* at 21-22 (listing the interviewing professionals who allegedly "shaped" the victim's testimony).

Our standard in reviewing a weight of the evidence claim is well-settled:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis and citations omitted); *see also Commonwealth v. Sanchez*, 36 A.3d 24, 27 (Pa. 2011) (stating that "[r]elief on a weight of the evidence claim is reserved for extraordinary circumstances, when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." (citation omitted)).

Initially, as addressed above concerning Rugg's first issue, Rugg failed to demonstrate that the victim's testimony was unduly tainted by the interviewing professionals. Further, Rugg's defense counsel did, in fact, cross-examine the victim concerning matters that allegedly showed that the interviewing professionals had "shaped" the victim's testimony, including, *inter alia*, (a) the victim's use of the word "defendant" when referring to Rugg; (b) the victim's psychological and behavioral issues; (c) the victim's truthfulness; and (d) the discussion between the victim and the prosecutor prior to trial. **See** N.T., 6/25/12, at 104-09, 114, 117.

In connection with his weight claim, Rugg also challenges the trial court's pretrial ruling that the defense was precluded from discovery of the following information because it was privileged: (1) the Assistant District Attorney's interview notes prepared while speaking with one of the interviewing professionals; and (2) the victim's medical/psychiatric records. **See** Brief for Appellant at 20-21. This distinct claim is not a challenge to the weight of the evidence, and Rugg has waived it by failing to preserve it in his Rule 1925(b) Concise Statement. **See Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998) (holding that "[a]ny issues not raised in a 1925(b) statement will be deemed waived."); **see also** Pa.R.A.P. 1925(b)(4)(vii) (providing that "[i]ssues not included in the Statement … are waived.").

Based upon the foregoing, the jury's verdict is not so contrary to the evidence as to shock our sense of justice, and we discern no abuse of

discretion by the trial court in rejecting Rugg's challenge to the weight of the evidence.

In his third issue, Rugg asserts that the trial court erred by failing to grant his Motion for judgment of acquittal on the charge of trafficking of persons because the evidence did not establish that he "did traffic or knowingly attempt to traffic another person (as the term 'traffics' is defined by [former Crimes Code section] 3001)[,] and that he knew that the other person would be subjected to forced labor or services (as the term 'forced labor or services' is defined by [former section] 3001)." Brief for Appellant at 25. Rugg points out that the victim testified that he was "uncomfortable" and scared" during Rugg's repeated sexual assaults. *Id.* at 26 (quoting N.T., 6/25/14, at 96, 99). According to Rugg, "[f]eelings of discomfort and fear do not … suffice to prove subjection to forced labor or services for purposes of a conviction of 18 Pa.C.S. § 3002(a)." Brief for Appellant at 26.

In its Pa.R.A.P. 1925(a) Opinion, the trial court set forth the standard of review and statutory provisions, and determined that the Commonwealth had established all of the elements of trafficking of persons beyond a reasonable doubt. *See* Trial Court Opinion, 5/20/14, at 5-7. We affirm based on the trial court's sound rationale with regard to this issue. *See id.*

Next, Rugg argues that the trial court erred in determining that he is an SVP, since the Commonwealth had failed to present sufficient evidence to support this designation. *See* Brief for Appellant at 27-33.

In reviewing a claim that the evidence was insufficient to support an SVP designation, we utilize the following standard of review:

> A challenge to the sufficiency of the evidence is a question of law requiring a plenary scope of review. The appropriate standard of review regarding the sufficiency of the evidence is whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all the elements of the offenses. As a reviewing court, we may not weigh the evidence and substitute our judgment for that of the fact-finder. Furthermore, a fact-finder is free to believe all, part or none of the evidence presented.

> At the [SVP] hearing[,] … the court shall determine whether the Commonwealth has proved by clear and convincing evidence that the individual is a [SVP]. Accordingly, in reviewing the sufficiency of the evidence regarding the determination of SVP status, we will reverse the trial court only if the Commonwealth has not presented clear and convincing evidence sufficient to enable the trial court to determine that each element required by the statute has been satisfied.

**Commonwealth v. Brooks**, 7 A.3d 852, 860 (Pa. Super. 2010) (citation omitted).

Rugg argues as follows:

> Paramount among the indicia of clear and convincing evidence[, to support an SVP classification,] is that it be direct. **See Commonwealth v. Plucinski**, 868 A.2d 20, 25 (Pa. Super. 2005) [(overruled on other grounds by **Commonwealth v. Morgan**, 16 A.3d 1165, 1173 (Pa. Super. 2011)).] Distinguishing the expert testimony of [the defense's witness,] Scott J. Scotilla, Ph.D. ["Dr. Scotilla"], the psychologist who examined [] Rugg and testified for him at the SVP determination hearing, from that of [the Sexual Offender Assessment Board ("SOAB") member who evaluated Rugg, Herbert E. Hays ("Hays")], is that Dr. Scotilla employed recognized, objective psychological testing, such as the [Minnesota Multiphasic

Personality Inventory ("MMPI")[5], in rendering his conclusions[,] which would qualify as direct. In contrast, [] Hays relied on the conviction[s], which, because [Hays] was not present [at trial] and had no transcripts, was the opposite of direct.

The SVP court's determination that [] Rugg was an SVP was not supported by clear and convincing evidence. [] Hays … offered only conclusions based on the conviction[s], not the examination, of [] Rugg[,] while … Dr. Scotilla offered an expert opinion based on testing and examination.

Brief for Appellant at 32-33 (footnote added, some citations omitted).

The trial court issued a separate Opinion on the matter of Rugg's SVP classification, thoroughly set forth the applicable law, and determined that the evidence, including Hays's testimony and assessment, established that Rugg met the requirements of an SVP. **See** Trial Court Opinion, 6/21/13, at 7-11. Our review confirms that the trial court's rationale is supported by the record and the law. We additionally observe that the trial court stated as follows in a separate part of its Opinion concerning his challenge to Hays's SVP assessment:

[Rugg] cites no case law or statutory authority for the assertion that a [SOAB] member performing an SVP assessment is required to rely on transcripts. The SVP assessment at bar sets forth that [] Hays relied on, *inter alia*, an interview with [Rugg], Pennsylvania Childline Records, the [criminal] information, the verdicts, the affidavit of probable cause, the incident investigation report, and a transcript of witness testimony. Accordingly, the [trial c]ourt finds that [] Hays relied on sufficient facts and data … in preparing his SVP assessment.

… [Regarding Rugg's] claim that [Hays's] SVP assessment was improper because [Rugg] was determined to be an [SVP] based solely on his conviction of a crime fitting the definition of

_____

[5] The MMPI is the most widely used standardized psychometric test of adult personality and psychopathology.

pedophilia[,] … th[e trial c]ourt determined that the SVP assessment was supported by sufficient foundation. … [] Hays'[s] SVP assessment clearly considers the fourteen factors outlined by the [Megan's Law] statute. 42 Pa.C.S.A. § 9795.4(b) (current version 42 Pa.C.S.A. § 9799.24(b)).

*Id.* at 4-5 (citations to record omitted). Because we determine that the trial court's rationale is sound, and the court properly found that the Commonwealth had proved by clear and convincing evidence that Rugg meets the requirements of an SVP, we affirm on this basis. ***See id.*** at 4-5, 7-11.

In his fifth issue, Rugg argues that the sentencing court imposed an illegal sentence when it sentenced him to a mandatory minimum prison term of ten years, pursuant to 42 Pa.C.S.A. § 9718(a)(1),[6] on each of his four IDSI convictions. ***See*** Brief for Appellant at 34-35. Specifically, Rugg argues as follows:

> The application of section 9718(a)(1)'s 10-year mandatory minimum term to each of [Rugg's IDSI convictions] … implicated ***Alleyne v. United States***, 133 S. Ct. 2151 ([] 2013), requiring submission of the fact triggering a mandate[, *i.e.*, in the instant case, whether the victim was under 16 years of age,] to the jury as an element of "a new, aggravated crime[.]" ***Id.*** at 2161. … Because [] Rugg's sentence imposed a mandatory minimum term as a sentencing factor[,] rather than as an element of the crime proved to the jury beyond a reasonable doubt, such sentence was illegal, as set forth in ***Alleyne***.

---

[6] Section 9718(a)(1) provides, in relevant part, as follows: "(1) A person convicted of the following offenses when the victim is less than 16 years of age shall be sentenced to a mandatory term of imprisonment as follows: … 18 Pa.C.S. 3123 (relating to involuntary deviate sexual intercourse) -- not less than ten years." 42 Pa.C.S.A. § 9718(a)(1).

Brief for Appellant at 34-35 (ellipses, capitalization and paragraph break omitted). Upon review of recent case law, we must agree that the sentencing court imposed an illegal sentence.

In **Commonwealth v. Wolfe**, 2014 PA Super 288 (Pa. Super. 2014), a panel of this Court held that the same IDSI statutory subsection under which Rugg was sentenced, 42 Pa.C.S.A. § 9718(a)(1), is unconstitutional under **Alleyne** and its progeny. **Wolfe**, 2014 PA Super 288 at **12, 16 (collecting cases and holding that although "the additional fact triggering the mandatory sentence[, *i.e.*, the victim being less than 16 years of age,] is also contained as an element within [] subsection [3123(b),] the IDSI statute under which Appellant was convicted[,]" the panel was bound to conclude that subsection 9718(a)(1) is void based on the prior decision of the *en banc* Court in **Commonwealth v. Newman**, 2014 PA Super 178 (Pa. Super. 2014), and observing that "**Newman** stands for the proposition that mandatory minimum sentence statutes in Pennsylvania of this format are void in their entirety."). Accordingly, we must vacate Rugg's illegal judgment of sentence and remand for resentencing.

Concerning Rugg's final issue, wherein he raises a challenge to the discretionary aspects of his sentence, we will not address this issue, since we are remanding for resentencing.

Convictions affirmed. Judgment of sentence vacated. Case remanded for resentencing consistent with this Memorandum. Superior Court jurisdiction relinquished.

J-S01011-15

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/19/2015

IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :     No. 1342 – 2010

            v.               :

PATRICK L. RUGG,              :

            Defendant.      :

FILED FOR RECORD
2014 MAY 20 AM 9: 02
CLERK OF COURTS
CAMBRIA COUNTY, PA

\*\*\*\*\*\*\*\*\*\*\*\*\*

APPEARANCES:

     For the Commonwealth:          TAMARA R. BERNSTEIN, ESQUIRE
                                            Assistant District Attorney

     For the Defendant:               THOMAS W. DICKEY, ESQUIRE

\*\*\*\*\*\*\*\*\*\*\*\*\*

**STATEMENT IN SUPPORT OF ORDERS PURSUANT TO
PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925(a)**

FLEMING, J., May 19, 2014. Pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), the trial court submits the following Statement in Support of Orders dated June 25, 2012; June 21, 2013; and December 27, 2013.

BACKGROUND

The Commonwealth charged Defendant Patrick L. Rugg with the following eight counts by Amended Information dated June 20, 2012: (1) through (4) Involuntary Deviate Sexual Intercourse with a Child under the age of 13, a felony of the first degree (18 PA.C.S.A. § 3123(b)); (5) Trafficking of Persons, a felony of the first degree (18 PA.C.S.A. § 3002(a)); (6) Indecent Assault, a felony of the third degree (18 PA.C.S.A. § 3126(a)(7)); (7) Endangering the Welfare of a Child, a felony of the third degree (18 PA.C.S.A. § 4304(a)(1)); and (8) Corruption of Minors, a misdemeanor of the first degree (18 PA.C.S.A. § 6301(a)(1)). This Court conducted a jury trial from June 25 to June 27, 2012. At trial, the Commonwealth presented testimony from numerous witnesses, including an eyewitness and the minor victim, Z.B. N.T.

(June 25, 2012), pp. 43-75 (testimony of the eyewitness); pp. 85-121 (testimony of Z.B.). The jury unanimously found Defendant guilty of all eight counts. *See* N.T. (June 27, 2012), pp. 231-234.

Defendant's convictions on four counts of Involuntary Deviate Sexual Intercourse with a Child triggered obligations under Pennsylvania's Megan's Law Statute. 42 Pa.C.S.A. §§ 9799.10, *et. seq.* On February 26, 2013, the Court conducted a Hearing pursuant to Section 9799.24(e) to determine if Defendant met the definition of a sexually violent predator as set forth in Section 9799.12. By Order dated June 21, 2013, the Court found the Commonwealth met its burden of proving by clear and convincing evidence that Defendant is a sexually violent predator. ORDER DATED JUNE 21, 2013, ¶ 3. On July 30, 2013, the Court sentenced Defendant as follows: Counts One through Four (Involuntary Deviate Sexual Intercourse with a Child), consecutive sentences of ten to twenty years imprisonment; Count Five (Trafficking of Persons), twenty-four to forty-eight months imprisonment, concurrent to Count One; Count Six (Indecent Assault), twelve to twenty-four months imprisonment, concurrent to Count One; Count Seven, (Endangering the Welfare of a Child), twelve to twenty-four months imprisonment, concurrent to Count One; and Count Eight (Corruption of Minors), six to twelve months imprisonment, concurrent to Count One. SENTENCE DATED JULY 30, 2013.

Defendant filed an Optional Post-Sentence Motion on August 9, 2013. The Court entertained oral argument on August 27, 2013 and requested the parties to submit briefs. The Court denied Defendant's Motion by Order dated December 27, 2013. ORDER DATED DEC. 27, 2013, ¶¶ 1-6. ON MARCH 19, 2014, Defendant filed a Notice of Appeal. On April 10, 2014, Defendant timely filed a Concise Statement Pursuant to Pa.R.A.P. 1925(b), setting forth eight purported errors. CONCISE STATEMENT, ¶¶ 1-8.

## Purported Error No. 1

Defendant argues the imposition of ~~concurrent~~ consecutive sentences on Counts One through Four (Involuntary Deviate Sexual Intercourse with a Child) was excessive and an abuse of discretion. CONCISE STATEMENT, ¶ 1. To this end, Defendant argues the sentence amounted to life imprisonment; the sentence was not an individualized sentence; and the sentence was

2

inconsistent with protection of the public, the gravity of the offenses as it relates to impact on the life of the victim and on the community, and Defendant's rehabilitative needs. *Id.*

When a defendant challenges discretionary aspects of a court's sentence, the following standard of review applies:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commw. v. Fullin*, 892 A.2d 843, 847 (Pa. Super. 2006) (internal citations omitted). When imposing a sentence, the trial court must consider, *inter alia*, "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b) ["Sentencing Code"].

In the case at bar, the trial court was persuaded by the heinous nature of the crimes, Z.B.'s age during the period of victimization, Defendant's lack of remorse, and Defendant's refusal to acknowledge that the events occurred. N.T. (July 30, 2013), pp. 16-17. Specifically, this Court noted that rehabilitation was unlikely because Defendant did not acknowledge his affliction; did not accept responsibility for his actions; and suffers from pedophilia, a lifelong condition. *Id.* at p. 17. Regarding the impact on the victim, Z.B.'s mother testified as follows:

> Ever since that day we received a phone call for Ebensburg CYS, our lives have been turned upside down. [Z.B.] was only ten years old when [Defendant] took away his youth and forced [Z.B.] to deal with adult issues. Since then, [Z.B.] has been institutionalized three times in various psyche [sic] wards. He's also been placed in a youth home for boys for 28 days. [Z.B.] had several behavioral problems to the point of being placed in Children's Adolescent Partial Hospital for two years instead of regular school. [Z.B.] is finally back on track. He's back in regular school, he's doing well, but he still struggles with everyday activities and he still has trust issues that he has been placed in emotional learning support classes when he is in school. This has not only affected [Z.B.], it affected all of us and my family as well.

*Id.* at p. 12. This Court carefully considered the factors set forth in Section 9721(b) of the Sentencing Code. Thus, Defendant's first purported error must be denied.

3

Next, this Court addresses Defendant's argument that the sentence is excessive because it results in a *de facto* "lifetime sentence." CONCISE STATEMENT, ¶ 1. Defendant cites the Superior Court decision of *Commw. v. Coulverson*, 34 A.3d 135, 141 (Pa. Super. 2011), for the principle that a sentence in the standard range may nonetheless be excessive if it is unlikely to end during the defendant's natural life span. DEFENDANT'S BRIEF ON POST-SENTENCE MOTIONS, p. 3. The defendant in *Coulverson* cited a multitude of factors the trial court did not consider, such as "the troubled circumstances of his background, his homelessness and destitution, the absence of a prior record score or any record of delinquency, and his remorse and cooperation with the police." 34 A.2d at 143.

Unlike the defendant in *Coulverson*, Defendant in the instant matter does not allege specific facts in support of his assertion that the Court failed to consider the factors set forth in Section 9721(b) of the Sentencing Code. CONCISE STATEMENT, ¶ 1. On the contrary, the facts in the case at bar support the Court's imposition of consecutive sentences on Counts One through Four for the reasons set forth above. *See* DISCUSSION OF PURPORTED ERROR NO. 1, *supra*, at pp. 3-4.


## Purported Error No. 2

Next, Defendant argues the Commonwealth failed to prove, beyond a reasonable doubt, the elements necessary for imposing a ten year mandatory minimum sentence on the convictions for Involuntary Deviate Sexual Intercourse with a Child. CONCISE STATEMENT, ¶ 2.

Section 9718(a)(1) of the Sentencing Code imposes a ten year minimum term of imprisonment, *inter alia*, where the victim of Involuntary Deviate Sexual Intercourse is under the age of 16. 42 PA.C.S.A. § 9718(a)(1). Defendant asserts that, pursuant to the United States Supreme Court decision in *Alleyne v. United States*, 133 S.Ct. 2151 (2013), the victim's age was an element that should have been submitted to the jury. DEFENDANT'S BRIEF ON POST-SENTENCE MOTIONS, pps. 2-4.

The defendant in *Alleyne* was convicted of using or carrying a firearm in relation to a crime of violence, which carried a mandatory minimum sentence *if* the defendant "brandished" the firearm during commission of the offense. 133 S.Ct. 2151, 2155 (2013). The jury found the

4

defendant guilty but did not indicate on the verdict slip that the firearm had been "brandished" during the offense. *Id.* at 2156. The sentencing judge applied the mandatory minimum sentence. *Id.* The Supreme Court vacated and remanded the sentence, reasoning as follows:

> Because the fact of brandishing aggravates the legally prescribed range of allowable sentences, it constitutes an element of a separate, aggravated offense that must be found by the jury, regardless of what sentence the defendant might have received had a different range been applicable.

*Alleyne v. U.S.*, 133 S.Ct. 2151, 2153 (2013).

In the case at bar, Defendant was charged with four counts of Involuntary Deviate Sexual Intercourse with a Child, which were alleged to have occurred between April 1, 2009 and June 10, 2010. AMENDED INFORMATION FILED FOR RECORD ON JUNE 20, 2012. "A person commits involuntary deviate sexual intercourse with a child, a felony of the first degree, when the person engages in deviate sexual intercourse with a complainant who is less than 13 years of age." 18 PA.C.S.A. § 3123(b). Z.B.'s age at the time of the crime was a specific element of the offense. *Id.* Z.B. testified that his date of birth is September 11, 1998. N.T. (June 25, 2012), p. 85. Thus, Z.B.'s age on April 1, 2009 was approximately 10½, and his age on June 10, 2010, was less than 12. The jury was instructed they must find Z.B. to be under the age of 13 at the time of the offenses to find Defendant guilty. N.T. (June 27, 2012), pp. 217-218. The jury found Defendant guilty of four counts of Involuntary Deviate Sexual Intercourse with a Child. N.T. (June 27, 2012) pp. 217-218.

By convicting Defendant of Involuntary Deviate Sexual Intercourse with a Child, the jury found the victim to be under the age of 13. This necessarily means the child is *also* under the age of 16, the requirement for imposition of a mandatory minimum sentence pursuant to Section 9718(a)(1). 42 Pa.C.S.A. § 9718(a)(1). The "fact" which Defendant argues constitutes an "element" necessary for imposing the mandatory minimum, *i.e.*, the victim is under the age of 16, *was* determined by the jury. For these reasons, Defendant's second error must fail.

**Purported Error No. 3**

Next, Defendant argues the Commonwealth's evidence was insufficient to prove the following elements of Count Five, Trafficking of Persons: (1) that Defendant "did traffic or

5

knowingly attempt to traffic another person;" and (2) that Defendant "knew that the other person would be subjected to forced labor or services." CONCISE STATEMENT, ¶ 3.

The Superior Court outlined the following standard for reviewing a challenge to the sufficiency of evidence:

> In reviewing the sufficiency of the evidence, we view all the evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, to see whether there is sufficient evidence to enable [the factfinder] to find every element of the crime beyond a reasonable doubt. This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on "more than mere suspicion or conjecture," the Commonwealth need not establish guilt to a mathematical certainty.

*Commw. v. McFadden*, 850 A.2d 1290, 1293 (Pa. Super. 2004) (internal citations and quotations omitted).

Purusant to the Pennsylvania Crimes Code, "a person commits an offense [of Trafficking of Persons] if the person knowingly traffics or knowingly attempts to traffic another person, knowing that the other person will be subjected to forced labor or services." 18 PA.C.S. § 3002. The term "traffic" is defined as "recruits, entices, harbors, transports or provides or obtains by any means." 18 Pa.C.S. § 3001. The term "forced labor or services" is defined as:

(1)     attempts to cause, causes or by threat of physical menace puts another person in fear of bodily injury;

(2)     physically restrains or threatens to physically restrain another person unlawfully;

(3)     abuses or threatens to abuse the law or legal process;

(4)     possesses except as required by Federal immigration law or regulation, destroys, conceals, removes or confiscates any actual or purported passport or other immigration document of another person, or any other actual or purported government identification document of another person; or

(5)     engages in criminal coercion of another person.

18 Pa.C.S § 3001.

In the case at bar, Defendant transported Z.B. from Ford City, Pennsylvania, to Defendant's home in Ebensburg, Cambria County, thus satisfying the definition of "traffics."

6

N.T. (June 25, 2012), pp. 154-155. While at Defendant's home in Ebensburg, Defendant subjected Z.B. to forcible sexual intercourse. *Id.* at pp. 97-100. Z.B. described feeling "uncomfortable, scared." *Id.* at p. 99. Clearly Defendant's actions constituted "forced labor or services," as Defendant caused Z.B. to be placed in fear of bodily injury and Defendant physically retrained Z.B. for the unlawful purpose of engaging in involuntary deviate sexual intercourse. 18 Pa.C.S. § 3001(1), (2). The evidence presented at trial was sufficient to sustain the jury's guilty verdict on Trafficking of Persons. Accordingly, Defendant's third alleged error must fail.

## Purported Error No. 4

Next, Defendant argues the Commonwealth's evidence was insufficient to prove the following elements of Count Seven, Endangering the Welfare of a Child: (1) that Defendant was acting as a "parent, guardian or other person supervising the welfare of a child under 18 years of age;" and (2) that Defendant engaged in a "course of conduct of endangering the welfare of a child." CONCISE STATEMENT, ¶ 4.

The Court notes that the standard of review discussed above applies equally to Defendant's fourth purported error. *See,* DISCUSSION OF PURPORTED ERROR NO. *3, supra* at pp. 6-7. The Pennsylvania Crimes Code defines Endangering the Welfare of a Child as follows:

> A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

18 PA.C.S.A. § 4304(a)(1).

Z.B.'s mother testified as follows: "[Defendant] was technically a godfather to [Z.B.]. [Defendant] was going to be if something would happen to me, he was going to be the one to take over.... His relationship with Z.B. at the time was great. It was perfect." N.T. (June 25, 2012), pp. 151-152. Furthermore, Z.B.'s mother described Defendant as Z.B.'s "father, like a father like figure for him." *Id.* at p. 157. Justin Cann, Defendant's roommate, described the relationship between Defendant and Z.B. as follows: "It was just a very nurturing relationship. I mean, Z.B. didn't have his father in his life and [Defendant] was pretty much taking that role

7

in his life." N.T. (June 25, 2012), p. 215. Z.B. often referred to Defendant as "dad" and Z.B. testified that he "looked to [Defendant] as my dad." *Id.* at p. 91. Moreover, Z.B. would spend weeks in the summer in Defendant's care. N.T. (June 25, 2012), p. 154. Clearly, Defendant was acting as an "other person supervising the welfare of a child."

Next, whether there is a "course of conduct" is a question of fact that must be alleged in the information, evidence of which must be elicited at trial and submitted to the jury. *Commw. v. Popow*, 844 A.2d 13, 16 (Pa. Super. 2004)). In the case at bar, the Commonwealth alleged a "course of conduct" in the Amended Information. AMENDED INFORMATION DATED JUNE 20, 2012. Z.B. clearly described two separate events during which Defendant engaged in Involuntary Deviate Sexual Intercourse with Z.B. N.T. June 25, 2012), pp. 94-100. The jury was instructed that "course of conduct" is defined as "a pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct." N.T. (June 27, 2012), p. 221. The testimony was sufficient to show a course of conduct, and the jury was properly instructed regarding this element. For these reasons, Defendant's fifth purported error must fail.

**Purported Error Nos. 5 and 6**

Next, Defendant argues the Court erred in determining Z.B. was "competent to testify and had not been tainted." CONCISE STATEMENT, ¶ 6. The issue of Z.B.'s possible taint was first raised in Defendant's Supplemental Omnibus Pre-Trial Motion for Relief. SUPPLEMENTAL OMNIBUS PRE-TRIAL MOTION FOR RELIEF FILED AUG. 1, 2011, p. 2, ¶¶ 6-15. At a September 20, 2011 Hearing, defense counsel requested the Court to defer ruling on the issue of taint pending counsel's review of Z.B's Children & Youth Services records. N.T. (Sept. 20, 2011), p. 8; ORDER DATED June 17, 2011, p. 2, ¶ 2. Thereafter, the issue was raised again in Defendant's Second Supplemental Omnibus Pretrial Motion for Relief, filed on June 4, 2012. SECOND SUPPLEMENTAL OMNIBUS PRETRIAL MOTION FOR RELIEF FILED JUNE 4, 2012, pp. 5-7, ¶¶ 9-14. The Court denied Defendant's request for a taint hearing by Order dated June 25, 2012. ORDER DATED JUNE 25, 2012.

Upon further examination, the Court concedes it should have conducted a competency hearing outside the presence of the jury since Z.B. was less than 14 years old at the time of trial. *Commw. v. Shearer*, 828 A.2d 383 (Pa. Super. 2003), *appeal granted*, 856 A.2d 834 (Pa. 2004); N.T. (June 25, 2012), p. 85. However, this Court elected not to remand for a competency hearing when, based on the record, the child was clearly competent; Defendant did not suffer prejudice; and remanding for a competency hearing would be a futile act. *Commw. v. Moore*, 980 A.2d 647, 658 (Pa. Super. 2009).

In determining the competency of a child under 14 years old, the following is considered:

> (1) such capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering *what it is* that she is called to testify about, and (3) a consciousness of the duty to speak the truth.

*Rosche v. McCoy*, 156 A.2d 307, 310 (Pa. 1959) (emphasis in original). In the instant matter, Z.B.'s testimony proves he was a competent witness. First, Z.B. understood the questions posed to him and expressed intelligent answers. *See generally* N.T. (June 25, 2012), pp. 83-121. Second, Z.B. exhibited the mental capacity to observe the event and remember what he was called to testify about. For example:

| Attorney Bernstein: | Do you remember what you were wearing when [Defendant] first came into your room? |
|---|---|
| Z.B.: | My pj's. |
| Attorney Bernstein: | And what happened to your pajamas? |
| Z.B.: | He took them off. |
| Attorney Bernstein: | He being Mr. Rugg, Patrick? |
| Z.B.: | Yes. |
| .... | |
| Attorney Bernstein: | I want you to tell this jury what the defendant did to you that made you uncomfortable in your bedroom. |
| Z.B.: | Hold on a minute. He had put his middle in my butt. |
| Attorney Bernstein: | And when you say his middle, what part of the body is that? |
| Z.B.: | (Indicating). |
| Attorney Bernstein: | And what do you do with your middle? |
| Z.B.: | Go to the bathroom. |
| Attorney Bernstein: | So he put his middle in your butt? |
| Z.B.: | Yes. |

9

| Attorney Bernstein: | And how did that make you feel? |
| Z.B.: | Uncomfortable. |
| Attorney Bernstein: | Now, you said he put his middle in your butt. How about, did he do anything to your middle? |
| Z.B.: | Yes. |
| Attorney Bernstein: | Can you please tell the jury what he did? |
| Z.B.: | He put his mouth on my middle. |
| Attorney Bernstein: | He put his mouth on your middle? |
| Z.B.: | Yes. |
| Attorney Bernstein: | Once he put his mouth on there, what did he do? |
| Z.B.: | Moved his head up and down. |
| Attorney Bernstein: | [Z.B.], when he put his middle in your butt, did something happen to his middle? |
| Z.B.: | Yes. Stuff came out. |
| Attorney Bernstein: | Stuff came out? What happened to the stuff? |
| Z.B.: | It was still in my butt. |
| Attorney Bernstein: | Now, did you ever see it or feel it when you were at the Ford City house? |
| Z.B.: | Yes. |
| Attorney Bernstein: | Did you see it? |
| Z.B.: | Yes. |
| Attorney Bernstein: | Can you please describe it to the jury? |
| Z.B.: | It was like mucus. |

N.T. (June 25, 2012), pps. 94-97. Third, Z.B. indicated he understood the difference between the truth and a lie. N.T. (June 25, 2012), pp. 83-85. For the reasons set forth above, Z.B. was competent to testify, and remanding this matter for competency proceedings would be a futile act.

Furthermore, the concerns underlying the competency test "become less relevant as the witness's age increases, ultimately being rendered totally irrelevant as a matter of law by age fourteen." *Commw. v. Judd*, 897 A.2d 1224, 1229 (Pa. Super. 2006). In the instant matter, Z.B. was born on September 11, 1998, and he reached the age of 14 less than three months after the trial. N.T. (June 25, 2012), p. 85. For this reason, remanding this issue would not only be futile, but it would be irrelevant as a matter of law.

Next, the Court addresses Defendant's claim that Z.B. was incompetent because he was a tainted witness. "In order to trigger an investigation of competency on the issue of taint, the moving party must show some evidence of taint. Once some evidence of taint is presented, the

10

competency hearing must be expanded to explore this specific question." *Commw. v. Delbridge*, 855 A.2d 27, 40-41 (Pa. 2003). To suggest taint, Defendant relies on the fact that Z.B. was interviewed during the investigation. N.T. (June 19, 2012), p. 3. During argument, defense counsel petitioned the Court to release additional records that he believed may be relevant to the issue of taint. *Id.* at pp. 3-4. Defendant's request for additional records belies his assertion that he presented evidence of taint sufficient to trigger a taint hearing.[1] Additionally, unlike the defendant in *Delbridge*, Defendant in the case at bar failed to present evidence of suggestive interview techniques, vilification of the accused, or interview bias. 855 A.2d at p. 41. Moreover, the children at issue in *Delbridge* were much younger than Z.B., *i.e.*, six and four at the time of the incident. *Id.* For these reasons, Defendant's sixth purported error should be denied.

## Purported Error No. 7

Next, Defendant argues the Court erred in finding sufficient evidence to prove Defendant is a sexually violent predator. CONCISE STATEMENT, ¶ 7. This Court relies on its Opinion dated June 21, 2013 regarding this issue.

## Purported Error No. 8

Finally, Defendant argues this Court erred in denying the suppression motion set forth in his Third Supplemental Omnibus Pretrial Motion for Relief, where Defendant asked for suppression of a CD containing various images seized from Defendant's laptop. CONCISE STATEMENT, ¶ 8; THIRD SUPPLEMENTAL OMNIBUS PRETRIAL MOTION FOR RELIEF, pp. 1-2, ¶ 1-3. This Court entertained argument on Defendant's Motion to Suppress on June 19, 2012. N.T. (June 19, 2012), pp. 18-24. By Order dated June 22, 2012, the Court denied Defendant's Motion to Suppress. ORDER DATED JUNE 22, 2012, ¶ 1.

A search and seizure must be initiated pursuant to a warrant except, *inter alia*, when a person voluntarily consents to a search. *Commw. v. Edwards*, 735 A.2d 723, 725 (Pa. Super.

---

[1] Moreover, the Court noted that Defendant requested additional records on the eve of jury selection; and the Court was not inclined to order a taint hearing based on the evidence submitted by Defendant. N.T. (June 19, 2012), p. 14.

11

1999) (internal citations omitted). For the consent to be valid, it must be "unequivocal, specific, and voluntary." *Id.* (internal citations omitted). In the case at bar, a search of Defendant's laptop was performed pursuant to a "Waiver of Rights and Consent to Search" signed by Defendant. COURT EX. 1. Defendant does not argue the consent was invalid; rather, Defendant avers the information sought to be suppressed was outside the scope of the consent.

The description of items to be searched for and seized included "images, photographs, videos, etc of any illegal pornography." COURT EX. 1. In addition, the Waiver contained a provision permitting seizure of the following:

(1) any contraband, the fruits of a crime or things otherwise criminally possessed.

(2) property which is or has been used as the means of committing a criminal offense.

(3) property which constitutes evidence of the commission of a criminal offense.

COURT EX. 1. The search revealed non-pornographic images of Defendant and Z.B., which the prosecution sought to introduce at trial for the purposes of establishing the relationship between them. N.T. (June 19, 2012), pp. 20, 23.

Defendant was charged with, *inter alia*, Endangering the Welfare of a Child pursuant to 18 Pa.C.S.A. § 4304(a)(1). The offense is defined as follows:

A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

*Id.* The seized photographs depict Defendant and Z.B. engaged in various activities, including one photograph of Defendant and Z.B. in bed together. N.T. (June 25, 2012), COMMW. EX. 18. The photographs were relevant to demonstrate an element of the crime, namely, that Defendant acted as a "guardian or other person supervising the welfare of a child under 18 years of age." Accordingly, the photographs are "property which constitutes evidence of the commission of a criminal offense." COURT EX. 1.

12

## CONCLUSION

For the reasons set forth above, the Trial Court respectfully requests that the Orders dated June 25, 2012; June 21, 2013; and December 27, 2013; as well as the convictions and sentences imposed; are AFFIRMED.

RESPECTFULLY SUBMITTED:

Linda Rovder Fleming, J.

COPIES TO:

☐ DEF.  ☐ C & F
☑ DA  ☐ SHERIFF
☑ ATTY.  ☐ OTHER
☐ FO
☐ PD

Mail

13

Circulated 01/27/2015 11:43 AM

INCIDENT NUMBER: 20100614M8337

PLACE(S), ITEM(S) OR VEHICLE(S) TO BE SEARCHED: COMPAQ LAPTOP PRESARIO V5000 S/N: CND6511D4T

ADDRESS OR LOCATION: 612 W. High St EBENSBURG PA 15931

(2) ITEM(S) TO BE SEARCHED FOR AND SEIZED, IF FOUND: IMAGES, PHOTOGRAPHS, VIDEOS ETC OF ANY ILLEGAL PORNOGRAPHY

(3) I, PATRICK L. Rubco _(CONSENTOR SHALL PRINT FULL NAME)_, HAVE BEEN REQUESTED BY Scott Stoltz _(PRINT NAME)_ OF EBENSBURG POLICE TO GIVE MY CONSENT FOR POLICE OFFICERS TO SEARCH PLACE(S), ITEM(S) OR VEHICLE(S) DESCRIBED ABOVE FOR THE ITEMS DESCRIBED ABOVE. I HAVE BEEN TOLD THAT I DO NOT HAVE TO GIVE MY CONSENT. I UNDERSTAND THAT I HAVE THE RIGHT TO REFUSE THIS REQUEST, AND THAT THE POLICE MAY NOT BE ABLE TO CONDUCT THIS SEARCH WITHOUT A SEARCH WARRANT UNLESS I GIVE MY CONSENT. NONETHELESS, I VOLUNTARILY GIVE MY CONSENT TO THE POLICE TO CONDUCT THIS SEARCH.

(4) [✓] I am the owner of the place(s), item(s) or vehicle(s) to be searched.

[ ] I rent or lease the place(s), item(s) or vehicle(s) to be searched from another person.

[ ] With the permission of the owner, I have equal access and control over the place(s), item(s) or vehicle(s) to be searched.

(5) I also understand that in addition to the items described above, if the following is found it may also be seized:

(1) any contraband, the fruits of a crime or things otherwise criminally possessed.

(2) property which is or has been used as the means of committing a criminal offense.

(3) property which constitutes evidence of the commission of a criminal offense.

(6) No one, including anyone from _____ or any other police officer, has threatened me in any way, nor has anything been promised to me in return for giving my consent to conduct this search.

WITNESS(ES)                                    CONSENTOR

Scott Stoltz                                   Patrick L. Rubco
(PRINT NAME)                                   (PRINT NAME)

_(signature)_                                  _(signature)_
(SIGNATURE)                                    (SIGNATURE)

(PRINT NAME)                                   (ADDRESS)

(SIGNATURE)                                    (CITY, STATE)

COURT'S
EXHIBIT NO. 1
IDENTIFICATION/EVIDENCE
DKT. # 1342-2010
DATE:

DATE:              TIME:              TIME:              50

IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :     No. 1342 – 2010

              v.              :

PATRICK L. RUGG,             :

        Defendant.        :

*************

APPEARANCES:

     For the Commonwealth:        TAMARA R. BERNSTEIN, ESQUIRE
                                  Assistant District Attorney

     For the Defendant:           THOMAS W. DICKEY, ESQUIRE

*************

## OPINION

FLEMING, J., June 21, 2013. This Court is called upon to decide two issues: (1) the admissibility of expert reports introduced at a February 26, 2013 Sexually Violent Predator Determination Hearing; and (2) whether the Commonwealth met its burden of proving by clear and convincing evidence that Defendant, Patrick L. Rugg, is a Sexually Violent Predator. The parties were directed to submit briefs addressing the admissibility of the expert reports. N.T. (February 26, 2013), pp. 77-78. On March 26, 2013, Defendant filed a "Brief on SVP Determination Hearing." On March 28, 2013, the Commonwealth filed its "Memorandum Regarding SVP Hearing."

### FACTUAL BACKGROUND

On June 27, 2012, a jury found Defendant guilty of four counts of Involuntary Deviate Sexual Intercourse with a Child, one count of Trafficking of Person, one count of Indecent Assault, one count of Endangering the Welfare of Children, and one count of Corruption of

Minors. This Court required Defendant to undergo a sexually violent predator assessment in accordance with 42 Pa.C.S.A. §9795.4(a) (May 29, 2007) (current version at 42 Pa.C.S.A. §9799.24 (Dec. 20, 2012)).[1] ORDER DATED July 20, 2012.

Herbert Hays, a member of the Sexual Offender Assessment Board ["SOAB"], performed the assessment of Defendant on September 13, 2012. N.T. (February 26, 2013), Comm. Ex. 1. Mr. Hays concluded that Defendant meets the criteria to be classified as a sexually violent predator. *Id.*, p. 7. On September 20, 2012, the Commonwealth requested a hearing pursuant to 42 Pa.C.S. §9795.4(e)(1) (current version at 42 Pa.C.S.A. §9799.24(e)(1)). On September 24, 2012, the Court granted the Commonwealth's request for a hearing. ORDER DATED SEPTEMBER 24, 2012. On October 19, 2012, Defendant filed a Motion Requesting Assessment Expert. Following a hearing, the Court determined Defendant to be indigent and appointed Dr. Scott Scotilla to be the defense expert. ORDER DATED DECEMBER 7, 2012. This Court conducted the sexually violent predator hearing on February 26, 2013.

LEGAL DISCUSSION

*Admissibility of the Sexually Violent Predator Assessment prepared by Mr. Hays*

Defendant argues against admission of the Sexually Violent Predator ["SVP"] Assessment *and* admission of Mr. Hays as an expert. DEFENDANT'S BRIEF, pp. 7-9. Specifically, Defendant argues that (1) the Commonwealth offered Defendant as "an expert in the field of forensic examination, specifically whether an individual meets the criteria as a sexually violent predator," which is at odds with statutory language; (2) Mr. Hays lacked a foundation by relying on the guilty verdicts without transcripts of the proceedings; (3) the process employed by Mr. Hays was "tautological" in that "the convictions equaled pedophilia;

---

[1] The Court references the applicable version of the statute at the time of the proceeding.

2

pedophilia equaled mental abnormality; pedophilia equaled no cure; no cure equaled re-offense; and the sum equaled sexually violent predator." DEFENDANT'S BRIEF, pp. 7-9.

The Commonwealth asserts that the SVP Assessment was properly admitted, as Mr. Hays considered all fourteen factors mandated by 42 Pa.C.S.A. §9795.4(b) (current version 42 Pa.C.S.A. 9799.24(b)). COMMW. BRIEF, p. 1. Furthermore, the Commonwealth argues that a sexually violent predator designation is not based on a finding that a specific number of the factors are relevant. COMMW. BRIEF, pp. 1-2 (citing *Commw. v. Meals*, 912 A.2d 213 (Pa. 2005); *Commw v. Brooks*, 7 A.3d 852 (Pa. Super. 2010)). Therefore, the Commonwealth asserts the SVP Assessment is proper as Mr. Hays reviewed and addressed all fourteen factors. COMMW. BRIEF, pp. 1-2.

The Court turns to the first of Defendant's arguments, *i.e.*, that the Commonwealth's acceptance of Mr. Hays as an expert is at odds with the statute. DEFENDANT'S BRIEF, p. 7. Mr. Hays is a current member of the Sexual Offender Assessment Board. N.T. (February 26, 2013), p. 5. Mr. Hays has conducted 976 sexually violent predator assessments for the courts. N.T. (February 26, 2013), p. 4. Mr. Hays has testified as an expert in the field of forensic examination of sexually violent predators in 24 Pennsylvania counties. N.T. (February 26, 2013), pp. 5-6. By statute, Mr. Hays is an expert in the behavior and treatment of sexual offenders. 42 Pa.C.S.A. §9799.3(a) (current version 42 Pa.C.S.A. §9799.35(a)). Additionally, through his extensive experience, Mr. Hays qualifies as an expert in "forensic examination, specifically regarding assessment of sexual offenders." N.T. (February 26, 2013), pp. 10-11; PA.R.E. 702. Accordingly, Mr. Hays possesses the knowledge, skill, training, and experience

3

necessary to opine whether Defendant meets the criteria of a sexually violent predator. PA.R.E. 702[2].

Next, Defendant argues that the SVP Assessment lacked the proper foundation, as Mr. Hays relied on Defendant's conviction without reviewing transcripts from the criminal proceedings. DEFENDANT'S BRIEF, p. 7. Pennsylvania Rule of Evidence 703 provides as follows:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence

Defendant cites no case law or statutory authority for the assertion that a Board member performing an SVP Assessment is required to rely on transcripts. The SVP Assessment at bar sets forth that Mr. Hays relied on, *inter alia*, an interview with Defendant, Pennsylvania Childline Records, the information, the verdicts, the affidavit of probable cause, the incident investigation report, and a transcript of witness testimony. N.T. (February 26, 2013), Ex. 1, p. 1. Accordingly, the Court finds that Mr. Hays relied on sufficient facts and data to satisfy the requirements of Pennsylvania Rule of Evidence 703 in preparing his SVP Assessment.

Finally, the Court addresses Defendant's claim that the SVP Assessment was improper because Defendant was determined to be a sexually violent predator based solely on his conviction of a crime fitting the definition of pedophilia. DEFENDANT'S BRIEF, pp. 7-8.[3] Defendant ostensibly relies on Rule of Evidence 703; however, this Court determined that the

---

[2] The Court finds no relevance in Defendant's statement that Mr. Hays did not use his background in psychology when assessing Defendant. *Commw. v. Conklin*, 897 A.2d 1168, 1176 (Pa. 2006) (finding that the statute *does not* require a psychiatrist or psychologist to perform a sexually violent predator assessment).

[3] The Court will address this argument in terms of the *weight* the Court should afford to the Assessment in the Court's SVP determination below.

4

SVP Assessment was supported by a sufficient foundation. *See supra*, pp. 4-5. Moreover, the Board member performing the assessment is *not* required to find all fourteen factors relevant, nor is the member required to give weight to all fourteen factors. *Commw. v. Meals*, 912 A.2d 213 (Pa. 2005); *Commw v. Brooks*, 7 A.3d 852 (Pa. Super. 2010). Mr. Hays' SVP Assessment clearly considers the fourteen factors outlined by the statute. 42 Pa.C.S.A. §9795.4(b) (current version 42 Pa.C.S.A. §9799.24(b)). The Court concludes that the Commonwealth established a sufficient foundation for admitting the SVP Assessment and, further, that the SVP Assessment complied with the relevant statutory criteria.

For the reasons set forth above, the Court **AFFIRMS** admission of the SVP Assessment into evidence.

*Admissibility of Dr. Scott Scotilla's Report*

We turn next to the admissibility of Dr. Scott Scotilla's report. Dr. Scotilla was qualified by the Court as an expert in the field of psychology. N.T. (February 26, 2013), p. 49. The Commonwealth argues that Dr. Scotilla's report is irrelevant because (1) Dr. Scotilla does not possess the necessary education, training, or experience regarding sex offenders and assessments; (2) Dr. Scotilla did not rely on the fourteen statutory factors in performing the assessment; (3) Dr. Scotilla did not accept Defendant's conviction as a conclusive determination of his guilt; and (4) Dr. Scotilla testified that the diagnosis of pedophilia hinged on whether Defendant's appeal is won or lost. COMMW. BRIEF, pp. 2-4. Defendant counters that the testimony of Dr. Scotilla is admissible because it focuses on negating the diagnosis of pedophilia and the likelihood of re-offense. DEFENDANT'S BRIEF, pp. 9-11.

5

*The Commonwealth proved by clear and convincing evidence that Defendant is a Sexually Violent Predator.*

The Commonwealth has the burden of proving by clear and convincing evidence that Defendant meets the criteria to be classified as a sexually violent predator. 42 Pa.C.S.A. §9799.24(a). The clear and convincing evidence standard is described as an "intermediate test," *i.e.*, more exacting than a preponderance of the evidence standard, but less exacting than proof beyond a reasonable doubt. *Meals*, 912 A.2d at 219.

Pursuant to the SVP statute, the Commonwealth must first show that Defendant has been convicted of a sexually violent offense as set forth in 42 Pa.C.S.A. §9799.14. Next, the Commonwealth must prove that Defendant has a mental abnormality or personality disorder that makes him likely to engage in predatory sexually violent offenses. 42 Pa.C.S.A. §9799.12; *Commw. v. Whanger*, 30 A.3d 1212, 1214 (Pa. Super. 2011). "Mental abnormality" is defined as "a congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." 42 Pa.C.S.A. §9799.12. "Predatory" is defined as "an act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." 42 Pa.C.S.A. §9799.12.

In a sexually violent predator determination, the following factors should be considered:

(1) Facts of the current offense, including:
  (i)  Whether the offense involved multiple victims.
  (ii)  Whether the individual exceeded the means necessary to achieve the offense.

7

     (iii)    The nature of the sexual contact with the victim.

     (iv)    Relationship of the individual to the victim.

     (v)    Age of the victim.

     (vi)    Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

     (vii)    The mental capacity of the victim.

(2) Prior offense history, including:

     (i)    The individual's prior criminal record.

     (ii)    Whether the individual completed any prior sentences.

     (iii)    Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

     (i)    Age.

     (ii)    Use of illegal drugs.

     (iii)    Any mental illness, mental disability or mental abnormality.

     (iv)    Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. §9799.24(a).

Defendant's conviction on, *inter alia*, Involuntary Deviate Sexual Intercourse qualifies him for SVP assessment under the statute. Defendant was convicted *prior* to the effective date of the current version of the Registration of Sexual Offenders Statute, *i.e.*, December 20, 2012. 42 Pa.C.S.A. §§9799.10-9799.41. The Court notes that Defendant would be subject to assessment under a reading of *both* the current and former versions of the statute. 42 Pa.C.S.A. §9799.24(a) (current version); 42 Pa.C.S.A. §9795.4 (former version). Under the current version, Involuntary Deviate Sexual Intercourse is a Tier III sexual offense that falls under the definition of "sexually violent offense." 42 Pa.C.S.A. §9799.12 (defining "sexually violent offense" as a Tier I, II or III offense as listed in §9799.14); 42 Pa.C.S.A. §9799.14(d)(4) (listing Involuntary Deviate Sexual Intercourse as a Tier III offense). Likewise, under the prior version

8

of the statute, an individual convicted of Involuntary Deviate Sexual Intercourse is also subject to assessment. 42 Pa.C.S.A. §9795.4; 42 Pa.C.S.A. §9795.1(b)(2)(i).

Next, the Court concludes the Commonwealth met its burden of proving that Defendant suffers from a mental abnormality or personality disorder. Mr. Hays testified that pedophilia meets the definition of a mental abnormality. N.T. (February 26, 2013), pp. 32-33; *see also Commw v. Leddington*, 908 A.2d 328, 335 (Pa. Super. 2006) (describing pedophilia as a "mental abnormality in the most decisive sense of the term"). At the SVP Hearing, Mr. Hays described a diagnosis of pedophilia as involving the following: (1) a person 16 years of age or older; (2) who has a sexual attraction (fantasies, urges or behaviors) towards a child; (3) where the child is more than five years younger than the individual in question; (4) and where the behavior persists over a period of at least six months. N.T. (February 26, 2013), pp. 17-18.[5] Mr. Hays testified that offenders who have male victims are twice as likely to reoffend as offenders who have female victims. N.T. (February 26, 2013), p. 18. Further, Mr. Hays testified that, according to professional literature and the DSM-IV, pedophilia is a lifetime condition with no cure. N.T. (February 26, 2013), p. 20.[6]

The following factors weigh in favor of qualifying Defendant as a sexually violent predator: First, Defendant engaged in a sexual relationship with the victim for a period of fourteen months. ASSESSMENT, p. 4, ¶ 3. The victim was between 10 and 11 years old at the time of the sexual contact. *Id*, p. 4, ¶ 5. At the time of the sexual contact, Defendant was between 30 and 31 years of age. *Id.*, p. 5, ¶ 1. Defendant gained access to the victim by gaining the trust of his mother, who allowed Defendant to provide child care. *Id.*, p. 5, ¶ 4.

---

[5] Dr. Scotilla did not dispute this description of a pedophilia diagnosis. N.T. (February 26, 2013), pp. 61-62.
[6] Defendant offered no evidence to rebut these statements. In fact, Dr. Scotilla agreed with Mr. Hays's definition of pedophilia and his conclusion that pedophilia is a mental abnormality. N.T. (February 26, 2013), p. 67.

9

Additionally, Defendant "groomed" the victim to participate in sex acts. N.T. (February 26, 2013), p. 21.

The following factors weigh against qualifying Defendant as a sexually violent predator: First, Defendant did not have multiple victims. ASSESSMENT, p. 3, ¶ 1. Defendant did not exceed the means necessary to achieve the offense. *Id.*, p. 3, ¶ 2. Defendant did not display unusual cruelty during the commission of the crime. *Id.*, p. 4, ¶ 6. Defendant does not have any prior offenses, nor has Defendant completed any prior sentences. *Id.*, p. 4, ¶¶ 1-2. Defendant did not use any illegal drugs in the commission of the crime. *Id.*, p. 5, ¶ 2. Defendant does not have a record of a mental health diagnosis. *Id.*, p. 5, ¶ 3.

Defendant was convicted of engaging in oral and anal intercourse with the victim, who was then a prepubescent child, over a period of six months. N.T. (February 26, 2013), pp. 17-18. Mr. Hays testified to a reasonable degree of professional certainty that Defendant suffers from the mental abnormality of pedophilia and meets the criteria to be classified as a sexually violent predator. N.T. (February 26, 2013), pp. 18-21. Dr. Scotilla agreed that the facts, as the jury found them to exist, support a pedophilia diagnosis and that Defendant meets the definition of a pedophile per the verdict. N.T. (February 26, 2013), pp. 61-62. However, after performing objective tests and evaluating Defendant, Dr. Scotilla concluded that no other evidence – aside from the conviction – supports a pedophilia diagnosis. N.T. (February 26, 2013), 59. Dr. Scotilla relies on Defendant's protestations of innocence in concluding that Defendant's diagnosis "hinged entirely on whether his appeal was lost or won." N.T. (February 26, 2013), p. 54.

10

Based on the evidence submitted at the Sexually Violent Predator Hearing and the statutory factors, this Court finds that Defendant meets the criteria for Pedophilia, Sexually Attracted to Males. ASSESSMENT, p. 6, ¶ 1. Because pedophilia qualifies as a mental abnormality, this Court concludes the Commonwealth has met its burden of proving that Defendant suffers from a mental abnormality. *Leddington*, 908 A.2d at 335. Further, Mr. Hays testified *without opposition* that pedophilia is an incurable lifetime condition. N.T. (February 26, 2013), p. 18. Because Defendant meets the criteria of pedophilia and because he repeatedly assaulted the victim with no intention of stopping, the Court finds there is a likelihood of re-offense. ASSESSMENT, p. 6, ¶ 4. Finally, the Court finds that Defendant's actions meet the definition of predatory behavior. Defendant groomed the victim and maintained a relationship with the victim's mother by providing child care, thereby affording Defendant the opportunity to sexually abuse victim. *Id.*, p. 5, ¶ 4; N.T. (February 26, 2013), p. 20.

For the aforementioned reasons, this Court finds that the Commonwealth has sustained its burden of proving by clear and convincing evidence that Defendant is a sexually violent predator within the meaning of the statute.

ACCORDINGLY THE FOLLOWING ORDER IS ENTERED:

11

IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :   No. 1342 – 2010

       v.

PATRICK L. RUGG,

       Defendant.

**FILED FOR RECORD 2013 JUN 21 PM 1:29 CLERK OF COURTS CAMBRIA COUNTY, PA**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*

APPEARANCES:

    For the Commonwealth:       TAMARA R. BERNSTEIN, ESQUIRE
                                  Assistant District Attorney

    For the Defendant:          THOMAS W. DICKEY, ESQUIRE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**ORDER**

AND NOW, this 21st day of June, 2013, it is hereby **ORDERED** and **DECREED** as follows:

1.    The Sexually Violent Predator Assessment prepared by Herbert Hays, member of the Sexual Offender Assessment Board, is **ADMITTED.**

2.    The report prepared by defense expert, Dr. Scott Scotilla, is **ADMITTED.**

3.    The Commonwealth met its burden of proving by clear and convincing evidence that Defendant is a Sexually Violent Predator within the meaning of 42 Pa.C.S.A. §§ 9799.24(a), 9799.12.

BY THE COURT:

COPIES TO:
- ☑ DEF.   ☐ C & F
- ☑ DA    ☐ SHERIFF
- ☑ ATTY.  ☐ OTHER
- ☑ PO    mail PA Board of Probation
- ☐ PD    PA Dept. of Corrections
- ☑ JAIL   SOAB
- ☐ JUDGE
- ☐ CA

_Linda Rovder Fleming_
Linda Rovder Fleming, J.